[Cite as *State v. To*, 2019-Ohio-1795.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-751 |
| v. | : | (C.P.C. No. 03CR-0580) |
| Bang To, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 9, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Kura, Wilford & Schregardus Co., L.P.A.,* and *Sarah M. Schregardus,* for appellant. **Argued:** *Sarah M. Schregardus.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} *Prefatory note*—this timeline may provide a useful reference in connection with the following discussion of defendant-appellant Bang To's appeal from the trial court's denial of his Civil Rule 60(B) motion:

> **November 3, 2003** – Bang To pleads guilty to two counts of trafficking in cocaine as third-degree felonies, one count of cocaine trafficking as a fourth-degree felony, and one fourth-degree felony count of cocaine possession. His plea form states that he is not a citizen of the United States.
>
> **January 14, 2004** – The trial court adopts the agreed sentence recommendation and sentences Mr. To to three years and six months in prison, with 18 months of that time mandatory and an understanding that the state would not object to judicial release after that period.

**August 24, 2005** – The trial court grants judicial release, allowing Mr. To to leave prison.

**July 27, 2010** – Mr. To's period of probation ends.

**October 20, 2017** – Through counsel, Mr. To files a Motion to Vacate Plea and Conviction on the ground that he had not properly been advised of the potential consequences of his conviction on his immigration status; he cites *Padilla v. Kentucky*, 559 U.S. 356 (2010), and R.C. 2943.031 (enacted 1989).

**October 31, 2017** – Mr. To executes the affidavit referenced variously in his motion of 11 days earlier as an unidentified attachment, as Exhibit B, and as Exhibit C.

**November 6, 2017** – The state files its memorandum opposing Mr. To's motion to withdraw his guilty plea. Beginning on the first page of its memorandum, the state underscores that Mr. To had attached no exhibits to his motion.

**February 5, 2018** – Having received no further filings in the matter, the trial court denies Mr. To's motion to vacate.

**April 18, 2018** – Mr. To through different counsel files a Motion for Relief Under Civ.R. 60(B) seeking to provide the purported attachments to his October 20, 2017 motion to vacate and have the trial court reconsider that matter. On review of the filings, the trial court denies the 60(B) motion on August 28, 2018.

{¶ 2} This case comes to us as an appeal from the trial court's decision denying defendant-appellant Bang To's Motion for Relief Under Civil Rule 60(B) that sought to have that court revisit on a supplemented record its judgment denying Mr. To's earlier motion to vacate a plea and conviction. A brief procedural history and reference to the surrounding legal landscape therefore seems in order.

**Facts and Legal Backdrop**

{¶ 3} Back in 2003, Mr. To pleaded guilty to various charges of trafficking in cocaine and a related possession count. He served about a year and a half in prison before gaining judicial release in 2005.

{¶ 4} In 2017, now concerned that his drug trafficking record could adversely affect his immigration status, he filed a motion to vacate his plea and conviction on the ground that he had not been properly cautioned on the effect the conviction could have regarding possible deportation, exclusion from admission to the United States, or naturalization here. Although he raised a federal constitutional claim under a United States Supreme Court case from 2010 that had been held not to be retroactive to sentences imposed before that decision issued, *compare Padilla v. Kentucky*, 559 U.S. 356 (2010), *with Chaidez v. United States*, 568 U.S. 342 (2013), he also asserted an independent state statutory right under R.C. 2943.031.

{¶ 5} On its face, that statute might appear to provide bright-line instruction that under certain circumstances, a court before accepting a plea from someone who does not certify that he is a U.S. citizen must "address the defendant personally" and advise him in specific, statutorily formulated terms that conviction may result in deportation, exclusion, or denial of naturalization: "the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty * * * if * * * the court fails to provide the defendant the [required] advisement." R.C. 2943.031(A), (B) & (D). "In the absence of a record that the court provided the advisement * * *, the defendant shall be presumed not to have received the advisement." R.C. 2943.031(E).

{¶ 6} The Supreme Court of Ohio has elaborated on the statute and developed a multi-factor balancing inquiry to determine whether a trial court has abused its discretion in denying a motion to withdraw. "As one of many factors underlying the trial court's exercise of discretion in considering the motion to withdraw, timeliness of the motion [relative to the date of conviction] will be of different importance in each case, depending on the specific facts." *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 42. Moreover, "[a]s one of the showings that must be made to prevail on an R.C. 2943.031(D) motion, a defendant must demonstrate that he or she was prejudiced by the trial court's alleged failure to comply," and while the statutory language is "crystal clear in supplying the specific language" of the advisement formulation, a "substantial-compliance approach" obtains. *Id.* at ¶ 45-46. *But see id.* at ¶ 59 (Moyer, J., dissenting) ("I disagree with this holding because it violates the plain language of R.C. 2943.031(D)").

{¶ 7} Mr. To, through counsel, relied heavily on that statute in his motion to vacate, which referenced an "affidavit in support attached hereto and incorporated here."

(Oct. 20, 2017 Mot. to Vacate Plea at 1.)   His memorandum in support of that motion mentioned three attachments: an "Exhibit A, transcript of [plea] proceedings of November 3, 2003 attached hereto," *id.* at 2; an "Exhibit B, Journal Entry, of November 3, 2003 [the date of the plea] attached hereto," *id.*; and statements of Mr. To, referenced first as an untitled document "attached hereto and incorporated herein," *id.*, then as "Ex B, Affidavit of Bang To, attached hereto," *id.* at 3; and finally as "Exhibit C," *id.* at 5.   No such documents actually were attached to the filing.

{¶ 8}   The state opposed Mr. To's motion to withdraw his plea, noting that some 14 years had elapsed since he was convicted and that his probation had ended seven years ago.  The state also pointed up that:  "To's motion also cites 'Ex. B,' which he describes as To's affidavit.  However, there are no exhibits or any other documents attached to To's motion." (Nov. 6, 2017 Memo. Contra Mot. to Withdraw Guilty Plea at 1-2.)   The state reiterated that "To has not provided any transcript," and observed that "To fails to show that he did not subjectively understand * * * [and] that he would have insisted on going to trial had he been advised" pursuant to statute.  *Id.* at 2.

{¶ 9}   Mr. To did not then seek to rectify any failure to have attached documents. He filed no reply and made no other filing in support of his motion to vacate.

{¶ 10} In the fullness of time, some three months after the state had filed its opposition to Mr. To's motion to vacate, the trial court denied that motion.  (Feb. 5, 2018 Decision & Entry.)  After noting that *Padilla* was inapplicable as without retroactive effect, the judge turned to R.C. 2943.031.  Reciting the statutory language, the judge noted that "the Court must proceed under the presumption that the [immigration-related] advisement was not given."  *Id.* at 3.  The judge quoted this court, as governed by *Francis*, observing that "the trial court, in its discretion, may take into account many factors, including timeliness and prejudice * * * '[S]ubsumed within timeliness is the prejudice to the state in terms of stale evidence and unavailability of witnesses.' "  *Id.* at 3-4, quoting *State v. Walker*, 10th Dist. No. 15AP-1107, 2017-Ohio-511, ¶ 21   (internal citations omitted).

{¶ 11} The trial court found the motion to vacate inexplicably untimely, and prejudicial to the state.  *Id.* at 4. "In the more than thirteen years that have passed between the finality of the conviction and the filing of this Motion, it is likely that the state's evidence has been destroyed, as the underlying charges were drug related, and any

witnesses would be unavailable.  The Court finds that the state would be prejudiced in recreating a case to prosecute, given the passage of time which has occurred."  *Id.* at 4-5.

{¶ 12} Further, noting that "no exhibits have been filed in support of the instant Motion," the trial court found that "Defendant failed to provide any evidence that he is facing exclusion * * * or denial of naturalization."  *Id.* at 5.  And, finding that "the plea agreement benefitted the Defendant," and given "the lack of any exhibits or supporting evidence," he concluded that "Defendant has not demonstrated prejudice" that is a precondition to relief under the statute pursuant to *Francis* and its progeny; he denied the motion with no evidence presented. *Id.* at 5-6.  He also turned away any effort to withdraw the pleas pursuant to Criminal Rule 32.1, as burdened by unexplained delay and a failure to show manifest injustice.  *Id.* at 8-9.

{¶ 13} Mr. To did not respond to the trial court's denial of his motion to vacate for roughly two and a half months.  Then, on April 18, 2018, he filed a Motion for Relief under Civil Rule 60(B).  That motion recited that Mr. To's earlier motion to withdraw his guilty plea "[i]n fact, * * * had no exhibits attached to it." (Apr. 18, 2018 Mot. for Relief Under Civ.R. 60(B) at 3.)   After quoting Civ.R. 60(B), the motion argued that the failure to submit exhibits supporting the motion to withdraw the plea had resulted from "inadvertence and professional oversight [sic]" of the previous counsel in failing to "submit the supporting exhibits *with* the motion that he filed." *Id.* at 4 (emphasis added.) And it provided an affidavit from that lawyer saying:  "I fully intended to file the exhibits referred in the filed [sic] on October 20, 2017, and I assumed that they had been properly filed *with the motion*." (Apr. 18, 2018 Mot., Ex. D; Krajenke Aff. at ¶ 7) (emphasis added.) The lawyer's affidavit also identified and submitted the purported missing exhibits:  "(A) a transcript of the plea and sentencing hearing * * *; (B) the November 3, 2003 journal entry [sic][;] and (C) an affidavit of Bang To."  (Krajenke Aff. at ¶ 4.)   Submitting the "absent exhibits," the 60(B) motion urged, "cures the defective record, and requires" revisiting Mr. To's motion to withdraw his plea. (Apr. 18, 2018 Mot. at 4.)

{¶ 14} The trial court disagreed.  After concluding that analysis under Civ.R. 60(B) was appropriate to these circumstances, the judge noted that to prevail under that rule, "a party must: (1) seek relief within a reasonable time; (2) demonstrate [that] he or she has a meritorious defense or claim to present if relief is granted; and (3) show [that] he or she is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5)."

(Aug. 28, 2018 Decision & Entry at 3, citing *GTE Automatic Elec., Inc. v. ARC Indus., Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus.)  Mr. To was not able to meet "*GTE* Prong 3," the trial court said, because he had not alleged facts to establish that he was entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). *Id.* at 4, 8.  The trial court therefore denied the Civ.R. 60(B) motion on the papers before him because the operative facts as alleged by Mr. To did not warrant relief on any Civ.R. 60(B) ground.  *Id.* at 8-9, citing *Cunningham v. Ohio Dept. of Transp.*, 10th Dist. No. 08AP-330, 2008-Ohio-6911, ¶ 35  (internal citations omitted).

{¶ 15} More specifically, the trial court explained that because "60(B)(2)-(4) are inapplicable" to this case, and because "60(B)(5) cannot be used as a substitute for any of the other[,] more specific provisions of Civ.R. 60(B)," To had to show that "he is entitled to relief under Civ.R. 60(B)(1)."  *Id.* at 4, citing Def.'s Mot. for Relief, Ex. D at ¶ 5-7; *McBride v. Columbus*, 10th Dist. No. 05AP-75, 2005-Ohio-6058, ¶ 6 (further citation omitted.)

{¶ 16} That Mr. To had not done, the trial court said, because "[n]egligence is an insufficient justification" for unilateral mistake, *id.* at 6, quoting *Howard v. Howard*, 10th Dist. No. 14AP-292, 2014-Ohio-5248, ¶ 9, and so failure of "oversight[,] or inadvertence" is not grounds to justify unilateral *mistake*, especially here where the state's memorandum opposing withdrawal of the plea had "pointed out, in two separate parts * * * that Defendant had failed to attach the exhibits" and where "Defendant has offered no justification for the failure to cure the issue between November 6, 2017 [the date of the state's filing] and February 5, 2018 [the date the court denied the motion to vacate the plea]," with "the neglect of a party's counsel * * * imputed [to] the party for the purposes of Civ.R. 60(B)(1)," *id.* at 6, citing *GTE*, 47 Ohio St.2d at 153; "*inadvertence* is not demonstrated," where "no action was taken" after the state had flagged a failure to attach exhibits, *id.* at 7 (emphasis added); "*surprise* is not supported by the facts and circumstances of this case," *id.* (emphasis added); and "even if special circumstances are found" (and none was alleged), *neglect* was not excusable because "the failure to attach the exhibits could have been prevented by the party seeking relief" and lack of "[o]versight by the attorney at the time of the filing of the Motion to Vacate does not constitute excusable neglect," *id.* at 8, citing *Dispatch Printing Co. v. Recovery Ltd. Partnership*,

10th Dist. No. 14AP-640, 2015-Ohio-1368, ¶ 13, and *Stuller v. Price*, 10th Dist. No. 02AP-29, 2003-Ohio-583, ¶ 52.

{¶ 17} The case thus comes to us for review of the trial court's denial of the Civ.R. 60(B) motion. Mr. To is correct in emphasizing that: "The issue in this particular [appeal] is not the underlying merits of the Motion to Withdraw Guilty Plea, but rather whether the trial court unreasonably denied Appellant's Civ. R. 60(B) motion." (Appellant's Reply Brief at 6-7.) The propriety of the trial court's ruling on that Civ.R. 60(B) motion is the only matter before us.

**Analysis**

{¶ 18} Mr. To's sole assignment of error asserts that "[t]he judgment of the trial court [denying the 60(B) motion] is contrary to law, and constitutes an abuse of discretion."

**Applicability of Civ.R. 60(B)**

{¶ 19} As a preliminary matter, we note that the state urges as an alternative ground for affirmance that it is not proper here to consider Civil Rule 60(B) at all. *See* Appellee's Brief at 4-15 ("Civ.R. 60(B) is inapplicable to withdraw a guilty plea or to claim ineffective assistance"). For the very limited circumstances of this case, however, involving Mr. To's effort to supplement the record and have the trial court revisit his motion to vacate the plea and conviction under the unique statutory scheme that R.C. 2943.031 creates, we conclude that Civ.R. 60(B) analysis is appropriate.

{¶ 20} The state acknowledges, as it must, that Criminal Rule 57 provides that a court "shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists" specifically prescribing a procedure to follow. Crim.R. 57(B); *see also State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, ¶ 10 ("Today we hold that the plain language of Crim.R. 57(B) permits a trial court in a criminal case to look to the Rules of Civil Procedure for guidance when no applicable Rule of Criminal Procedure exists"). By the same token, of course, where the criminal rules do set forth the relevant procedure, recourse to the civil rules is not warranted. *Schlee* at ¶ 11-12.

{¶ 21} We are not persuaded by the state's arguments that Crim.R. 32.1 or the rules governing petitions for postconviction relief always cover the panoply of procedural issues surrounding an attempt to revisit denial of a motion to vacate a plea and sentence as predicated on the dictates of R.C. 2943.031(D) that "[u]pon motion of the defendant, the

court shall set aside the judgment and permit the defendant to withdraw a plea of guilty * * * if * * * the court fails to provide the advisement" regarding the potential consequences a conviction may have for immigration status.

{¶ 22} The Supreme Court was explicit in *Francis*: "In most circumstances, motions to withdraw guilty or no contest pleas are subject to the standards of Crim.R. 32.1 [with its requirement that a defendant demonstrate 'manifest injustice']. However, an examination of R.C. 2943.031 in its entirety makes apparent the General Assembly's intent to free a noncitizen criminal defendant from the 'manifest injustice' requirement of Crim.R. 32.1 and to substitute R.C. 2943.031(D)'s standards in its place * * * [T]he General Assembly has created a substantive statutory right for certain criminal defendants * * * [that]prevails over the general procedural provisions of Crim.R. 32.1." 2004-Ohio-6894 at ¶ 26. "Taken as a whole," that is, "R.C. 2943.031's emphasis is on the mechanical question of whether the defendant received the warning required" by that statute. *Id.* at ¶ 30.

{¶ 23} In the face of this statutory and Supreme Court language, the state cannot be heard to say that " 'Crim.R. 32.1 contains the specific, proper procedure to withdraw a guilty plea' " in the specific context of this statute relating to immigration-status warning. *Compare* Appellee's Brief at 8 (also conceding that its cited cases there "all dealt with Crim.R. 32.1" and not with R.C. 2943.031); *see, e.g., State v. Muhumed*, 10th Dist. No. 11AP-1001, 2012-Ohio-6155, ¶ 22 (answering "in the negative" question of whether a previously denied motion to withdraw a guilty plea pursuant to Crim.R. 32.1 prevents party "from subsequently pursuing a motion to withdraw, pursuant to R.C. 2943.031(D), on the grounds that res judicata [somehow] applies because the second motion is a successive motion").

{¶ 24} Thus, for example, while a defendant may not offer a Civ.R. 60(B) motion "as a substitute for his failure to appeal the original judgment" within the time permitted for direct appeals of convictions, *State v. Wooden*, 10th Dist. No. 02AP-473, 2002-Ohio-7363, ¶ 9, the Supreme Court, in recognizing that R.C. 2943.031 "does not mention timeliness," has said that "[t]imeliness of [a motion under that particular statute] is just one of many factors the trial court should take into account when exercising its discretion in considering whether to grant the motion. * * * This is not a situation that requires a bright-line rule." *Francis*, 2004-Ohio-6894 at ¶ 40, 42. That is to say, again, that " 'R.C.

2943.031(D) provides a method for withdrawing a guilty plea outside of that provided in Crim.R. 32.1.' " *Muhumed*, 2012-Ohio-6155 at ¶ 21, quoting favorably from *Lakewood v. Shurney*, 8th Dist. No. 80885, 2002-Ohio-4789, ¶ 10.

{¶ 25} The same point establishes why the state cannot persuasively maintain that procedures in this particular statutory context inevitably must be governed by Crim.R. 35 and R.C. 2953.21 governing petitions for postconviction relief. *Schlee*, as again invoked by the state, explicitly states that "some motions may not be recast by a trial court" as motions for postconviction relief. 2008-Ohio-545 at ¶ 13. Here, the precise timing requirements of postconviction rules including R.C. 2953.21(A)(2) and 2953.23 do not automatically control, *compare Francis* at ¶ 40-42. Moreover, while Mr. To's motion to vacate had made a feint in the direction of *Padilla*, the primary basis for that motion was under Ohio statute, not under either the federal or the state constitution, and it did not hinge on alleged constitutional deprivations or on DNA testing. His Civ.R. 60(B) motion, then, as filed in this case, does exist "independently" from a hypothetical motion for postconviction relief and may not appropriately be recast as such a motion. *Compare* Appellee's Brief at 7, *with Schlee*, 2008-Ohio-545 at ¶ 12-13 (addressing circumstances where "the [particular] Civ.R. 60(B) motion filed by Schlee could have been filed as a petition for postconviction relief").

{¶ 26} Contrary to the state's view, then, this is not a case where " 'res judicata * * * acts to bar raising issues in a successive Crim.R. 32.1 motion to withdraw a plea of guilty where those issues could have been raised in the prior Crim.R. 32.1 motion.' " *Compare* Appellee's Brief at 9-10, quoting *Muhumed* at ¶ 13.

{¶ 27} R.C. 2943.031 establishes standards very different from those that apply under Crim.R. 32.1. Further, Mr. To's 60(B) motion was not a second attempt to withdraw a guilty plea, but rather an effort to have the court reevaluate its denial of his sole attempt to withdraw the plea under the statute, in light of a proposed record providing "absent" exhibits. This is not akin to *State ex rel. White v. Suster,* 101 Ohio St.3d 212, 2004-Ohio-719, which involved various successive attempts to raise the same, already rejected statutory claims.

{¶ 28} If claims of "res judicata" always could foreclose requests to provide relief from judgment even on the specific grounds provided in Civ.R. 60(B), that rule could never have application. But it does, even in certain criminal cases. *See, e.g., Schlee*,

2008-Ohio-545 at ¶ 12 (analyzing whether the particular 60(B) motion there could have been filed as a petition for postconviction relief); *State v. Brown*, 7th Dist. No. 13 MA 172, 2014-Ohio-5824, ¶ 71-72 ("appeal [there, as here] would have been based upon a different argument than that made in the Civ.R. 60(B) motion.  The motion for relief raised items existing outside of the record and was based upon mistakes of the parties and the expert and not a mere argument that the trial court committed a mistake. * * * Civ.R. 60(B) exists in order for a party to seek relief from final orders that cannot be raised on appeal"); *State v. Dovala*, 9th Dist No. 13CA010440, 2014-Ohio-2331 (relief under 60(B)(5)).

{¶ 29} Here, where Mr. To "specifically invoke[ed] Civ.R. 60(B) for relief from judgment based upon a failure to attach exhibits to his Motion to Vacate" (and not as a claim for ineffective assistance of counsel), the trial court was right in addressing the motion under the terms of that civil rule.  *See* Decision & Entry at 2-3; *see also id.* at 4 (noting that " 'neglect of a party's attorney will be imputed to the party for the purposes of Civ.R. 60(B)((1),' " *GTE*, 47 Ohio St.2d at 153).

**Civ.R. 60(B) requirements and standard of review**

{¶ 30} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that:  (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken."  *GTE*, 47 Ohio St.2d 146, at paragraph two of the syllabus and 150 (citations omitted).  The movant must satisfy each of these three requirements.  *Id.* at 151.  And even in addressing a paradigmatic case involving whether relief should be granted from a default judgment where the movant has a meritorious defense, the principle that cases should be decided on their merits "does not obviate the requirement that the movant must demonstrate that he is entitled to relief under one of the grounds stated in Civ.[R.] 60(B)(1) through (5)."  *Id.*

{¶ 31} As enumerated in the rule, those grounds are:  "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence [under specified conditions]; (3) fraud * * * (4) [satisfaction of] judgment * * *; or (5) any other reason justifying relief from the judgment."  Civ.R. 60(B).  Again, the motion must be made "within a reasonable time."  *Id.*

{¶ 32} We review a trial court's grant or denial of a motion under Civ.R. 60(B) for abuse of discretion, a standard to which both sides here agree. *See Herlihy Moving & Storage, Inc. v. Nickison*, 10th Dist. No. 09AP-831, 2010-Ohio-6525, ¶ 9, citing *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987); Appellant's Brief at 6; Appellee's Brief at 15; Appellant's Reply at 8. "When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court." *Herlihy* at ¶ 10. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Id.* at ¶ 9 (citations omitted). " 'In order to have an "abuse" [of discretion], the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Id.* at ¶ 10 (citations omitted).

{¶ 33} Further, we have reiterated that a "party who files a motion for relief from judgment under Civ.R. 60(B) is not automatically entitled to such relief, nor to a hearing on the motion * * * [T]he movant bears the burden of demonstrating that he is entitled to a hearing on the motion * * * * [by alleging] 'operative facts which would warrant relief * * * * Thus, the movant must allege operative facts that, if true, would be sufficient to establish each of the elements of the *GTE* test." *Cunningham,* 2008-Ohio-6911, at ¶ 35, quoting *Kay v. Marc Glassman, Inc.* 76 Ohio St.3d 18, 19 (1996) (which directs that a hearing must be held to take evidence and "verify" operative facts as set forth to warrant relief) (various other citations omitted).

**The trial court did not err in denying Mr. To's 60(B) motion.**

{¶ 34} To begin, we observe that neither the trial court nor the parties have much addressed the threshold question of whether Mr. To advanced his Civ.R. 60(B) motion within "a reasonable time" from the date of that court's denial some two and a half months earlier of the motion to vacate the plea. That February 5, 2018 Decision & Entry (which found the underlying motion to vacate untimely and prejudicial to the state, and that it failed to show prejudice to Mr. To) again pointed out that "no exhibits have been filed in support of the instant Motion" and that "Defendant referenced exhibits, but did not attach any." (Feb. 5, 2018 Decision & Entry at 5, 6.)

{¶ 35} Mr. To's Civ.R. 60(B) motion and his appeal argue that the exhibits were to have been filed "on October 20, 2017 * * * with the motion" to vacate, *see, e.g.,* Apr. 18,

2018 Motion, Ex. D; Krajenke Aff. at ¶ 7, but he does not explain either here or in his filings below why, if they had been ready to go for half a year before the Civ.R. 60(B) motion was filed, the 60(B) motion so lagged the trial court's decision denying the motion to vacate. *See, e.g.*, Appellant's Brief at 14 (conclusory assertion that motion was timely as "filed less than 90 days after the original decision noting the absence of supporting documents," with "no attempt to delay"). And Mr. To had been advised of the evidentiary deficiency long before that. *See* Nov. 6, 2017 Memo. Contra Mot. to Withdraw Guilty Plea at 1-2 ("there are no exhibits or any other documents attached to To's motion").

{¶ 36} "It is the movant's burden of proof to present factual material that, on its face, establishes the timeliness or justifies delays in filing the motion to vacate. * * * In the absence of any explanation for the delay in filing the Civ.R. 60(B) motion, the movant has failed to meet his burden of establishing timeliness of his motion, and the motion to vacate should be denied." *EMC Mortg. Corp. v. Pratt*, 10th Dist. No. 07AP-214, 2007-Ohio-4669, ¶ 9 (affirming judgment that even with a potentially valid claim of surprise, unexplained delay of four and a half months in filing 60(B) motion was unreasonable and constituted grounds for denying the motion). "The requirement of timely filing a motion for relief ensures finality in all cases." *Id.* at ¶ 8 (citation omitted). An "unexplained or unjustified delay in making the motion after discovering a ground for relief may put the motion beyond the pale of a reasonable time." *Herlihy*, 2010-Ohio-6525, at ¶ 15 (holding that trial court did not abuse its discretion in rejecting 60(B) motion as untimely given unexplained four-month delay).

{¶ 37} Here, especially because Mr. To had been on notice for so long that the referenced materials had not accompanied his motion to vacate, we might be persuaded to find that the trial court had not abused its discretion had it denied the 60(B) motion for its unexplained lack of timeliness. Because that was not the basis for the trial court's ruling, however, we proceed to examine the reason for which the judge did deny the 60(B) motion: its failure to allege operative facts that, if true, would warrant relief under Civ.R. 60(B)(1) through (5). (*See* Aug. 28, 2018 Decision & Entry at 8-9.) We conclude that the trial court did not abuse its discretion in making that determination, and that it was correct as a matter of law on the lack of sufficient operative facts.

{¶ 38} At the outset of its analysis, the trial court found that "upon review of Defendant's argument, Civ.R. 60(B)(2)-(4) are inapplicable." *Id.* at 4. It further noted

that "Civ.R. 60(B)(5) cannot be used as a substitute for any of the other[,] more specific provisions of Civ.R. 60(B)," and that therefore "Defendant must prove he is entitled to relief under Civ.R. 60(B)(1)." *Id.* Mr. To does not dispute that assessment. *See, e.g.*, Appellant's Brief at 9-14 (relying on claimed "inadvertence" and "excusable neglect"); Appellant's Reply at 7 (claiming "trial court abused its discretion when it denied Appellant's motion on the basis that he failed to demonstrate mistake, inadvertence and/or excusable neglect").

{¶ 39} At argument here, Mr. To's counsel emphasized "excusable neglect" as the most "on point" of the (B)(1) grounds in this context. *See also* Appellant's Brief at 11 ("In comparison to 'inadvertence,' the stated basis of 'excusable neglect' under the Rule has been recognized by the courts as a much more fluid concept"). Mr. To does not and could not argue "surprise," and the trial court was correct in observing, Aug. 28, 2018 Decision & Entry at 6, that "mistake" typically comprehends a mutual mistake of material fact: courts "generally do not grant relief from a judgment when the alleged mistake was a unilateral mistake on the part of one party or its counsel," and while a demonstrated justification can absolve a unilateral mistake, "negligence is an insufficient justification." *Howard*, 2014-Ohio-5248, at ¶ 9.

{¶ 40} Mr. To says that the "excusable neglect" and "inadvertence" he posits relate to his lawyer's having "failed to submit the supporting exhibits with the motion he filed" seeking to vacate the plea and conviction. (Appellant's Brief at 9, citing lawyer Krajenke's Affidavit.) But of those three "absent" exhibits, only one has potential salience here. The plea form (Exhibit C to Mr. To's 60(B) motion; referenced as Exhibit B in the earlier motion to vacate) was *already* part of the record of the case and bears a filing date stamp from 2003; the plea counts and sentences and Mr. To's indication that he was not a citizen all were understood by the trial court in ruling on the motion to vacate. *See* Feb. 5, 2018 Decision & Entry at 1 (specifying counts and noting that "[t]he plea form indicates that Defendant is not a citizen"). And the transcript of plea proceedings (Exhibit A to Mr. To's 60(B) motion, and referenced with the same designation in the motion to vacate) was to be employed for the proposition that the court at time of plea had not given defendant the advisements required by statute—but the trial court, in considering the motion to vacate and in keeping with the statute's mandate, had *presumed* a failure of compliance.

*Id.* at 3 ("Here, the Court must proceed under the presumption that the advisement was not given. R.C. 2943.031(E)").

{¶ 41} What then was not before the trial court and of possible significance to Mr. To's arguments to vacate his plea was his own affidavit attesting that he would not have taken the plea deal had he received the requisite advisement (Apr. 18, 2018 Mot. for Relief Under Civ.R. 60(B); Ex B, To Aff., referenced variously in his motion to vacate as an unidentified attachment, then as "Ex B," and finally as "exhibit C"). Mr. To's claim throughout the proceedings on his Civ.R. 60(B) motion has been that his counsel "through inadvertence and * * * oversight, * * * failed to submit the supporting exhibits *with* the motion" to vacate. (April 18, 2018 Mot. for Relief Under Civ.R. 60(B) at 4) (emphasis added); *see also* Appellant's Brief at 9; Krajenke Aff. at ¶ 7 ("I fully intended to file the exhibits referred [to] in the [motion to vacate] filed on October 20, 2017, and I assumed that they had been properly filed *with* the motion") (emphasis added).

{¶ 42} What Mr. To claims as a result of inadvertence or neglect, then, is *not* that he filed his motion to vacate too soon (in the context of a motion that followed his conviction by some 14 years, and with no hard and fast time limit), or that he intended but failed to supplement the motion with an additional evidentiary filing some days or weeks *after* the motion was submitted, but rather that he did not file his affidavit with his motion. Yet the affidavit on its face rebuts that possibility: It reflects that Mr. To did not even execute the document until October 31, 2017, eleven days after his motion had been filed. We note that the motion to vacate itself shows uncertainty as to how to reference the document, *see* Oct. 20, 2017 Motion to Vacate Plea at 2 (undesignated "attached" document), 3 ("Ex B, Affidavit of Bang To"), 5 ("Exhibit C"), but we are not in a position to speculate as to why that was. Had such a document been filed, unsigned and unsworn, on the date the motion to vacate was filed, it still would have lacked any intended effect.

{¶ 43} So the short answer to Mr. To's position that the failure to file his affidavit with his motion to vacate was the result of inadvertence or excusable neglect is that it was not possible to make such a filing at that time because the executed affidavit as now presented apparently did not exist. By definition, failing to do the impossible cannot be the result of inadvertence or neglect. And the record in this case is devoid of even the slightest suggestion as to why the affidavit was not executed on any day within the week of the filing of the motion (and that is not the inadvertence or neglect claimed). Under these

circumstances, or rather under the lack of any explained circumstances, the trial court was under no obligation to inquire further.  *See, e.g., Brown v. Brown*, 10th Dist. No. 18AP-269, 2018-Ohio-4741, ¶ 12 (" '[i]f the material submitted by the movant in support of a motion for relief from judgment under Civil Rule 60(B) contains no operative facts or meager and limited facts and conclusions of law, it will not be an abuse of discretion for the trial court to overrule the motion and refuse to grant a hearing' ") (citations omitted).

{¶ 44} But the trial court did in any event proceed to assess the unadorned arguments of inadvertence and excusable neglect at face value.  It emphasized that even after the state had put Mr. To's counsel on notice that no exhibits had been attached to the motion to vacate, he "failed to remedy the issue":  he did not file a reply or otherwise move for leave to file the exhibits.  (Aug. 28, 2018 Decision & Entry at 7.)  "Instead, no action was taken" through November and December of 2017, through all of January of 2018, and for some time even after the trial court denied the motion to vacate on February 5, 2018.  *Id.*

{¶ 45} Not filing the "absent" exhibits even after being put on notice that they were "missing" is something other than inadvertent "carelessness" or "accidental oversight."  *Compare Stewart v. Heard*, 2d Dist. No. 20787, 2005-Ohio-5241, ¶ 18 (citing Black's Law Dictionary definition of "inadvertence").   In argument to this court, Mr. To's newer counsel speculated that former counsel "obviously didn't read" the state's three-page memorandum highlighting that the motion to vacate had "no exhibits or any other documents attached," *see* Nov. 6, 2017 Memo Contra at 1-2.  Mr. To did not offer that explanation in his Civ.R. 60(B) materials, nor is it or any explanation for such inaction elsewhere in the record.  *See, e.g.,* Krajenke Aff. at ¶ 7 (ending with, "I assumed [the exhibits] had been properly filed with the motion").  More fundamentally, that is not a claim of inadvertence, but of obduracy or neglect (and not the excusable kind).  *See, e.g., PHH Mtge. Corp. v. Northup*, 4th Dist. No. 11CA6, 2011-Ohio-6814, ¶ 22 ("a party involved in litigation cannot simply sit back and claim ignorance of the proceedings").

{¶ 46} In *Stuller v. Price*, for example, we considered an argument that counsel's omission from a medical expert's affidavit of required magic language qualifying him to testify could permit relief from judgment on grounds of "inadvertent mistake or excusable neglect."  10th Dist. No. 02AP-29, 2003-Ohio-583, ¶ 10, 50 (adding that "appellants are relying primarily on the grounds of mistake, inadvertence and excusable neglect in the

preparation of [the] affidavit").  In the course of evaluating timeliness, we underscored language from an earlier ruling that " '*Appellants were put on notice by appellee's reply to their memorandum contra the summary judgment motion that the affidavit * * * was deficient, and they could have requested leave of the court to supplement the affidavit or file further affidavits * * *.*' "  *Id.* at ¶ 42 (emphasis in original quotation); *see also id.* at ¶ 45 ("the trial court expressly considered the failure by appellants * * * to take corrective measures after they were put on notice that the affidavit * * * was deficient").  That evaluation can transfer to the "inadvertence" argument, too.  We proceeded in *Stuller* to affirm denial of the Civ.R. 60(B) motion as further warranted because "appellants have failed to establish entitlement to relief * * * under the provisions of * * * Civ.R. 60(B)(1) * * *"  *Id.* at ¶ 48.

{¶ 47} *PHH* further demonstrates that there is a difference between inadvertence and mere neglect.  There, the trial court had vacated summary judgment so as to allow a defense response within the allotted time.  Defendant still did not respond; the court entered summary judgment; and the defense later claimed "inadvertence or excusable neglect under Civ.R. 60(B)(1)." 2011-Ohio-6814 at ¶ 8.  The Fourth District Court of Appeals affirmed denial of the motion for relief, ruling that sustained, unjustified failure to respond to a filing during ongoing litigation does not fit within the category of "inadvertence":  the circumstances there did "not demonstrate excusable neglect or inadvertence.  Instead, appellant's attorney's failure to respond to appellee's summary judgment, which is imputed to appellant, demonstrates mere neglect." *Id.* at ¶ 20.

{¶ 48} Indeed, Civ.R. 60(B)(1) cases in which a party is aware and in the midst of ongoing litigation and yet fails to respond appropriately to filings tend to be analyzed under the rubric of "neglect."  They do not end well for the moving party unless he or she can point to special, unusual mitigating circumstances nowhere suggested here.  *See, e.g., Suon v. Mong*, 10th Dist. No. 17AP-879, 2018-Ohio-4187, ¶ 25, quoting *Ron Christopher Co. v. Borruso*, 10th Dist. No. 17AP-369, 2017-Ohio-9033, ¶ 12 ("Where a party has knowledge of the lawsuit, * * * the failure to respond to the motion for summary judgment amounts to mere neglect in the absence of 'any special, disruptive, or unusual circumstances' "); *Gamble Hartshorn, LLC v. Lee*, 10th Dist. No. 17AP-35, 2018-Ohio-980, ¶ 32 ("mere neglect" is not "excusable neglect"; excusable neglect in not responding arises only from an action " 'not in consequence of the party's own carelessness,

inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident' ") (citations omitted); *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. No. 14AP-640, 2015-Ohio-1368, ¶ 13-16 (summarizing cases; "most cases that have found excusable neglect also have found special circumstances that justify the neglect"; even with such circumstances, other cases have declined to find excusable neglect "if the party or the attorney could have controlled or guarded against" such circumstances; "the demands of being a busy lawyer or of being preoccupied with other litigation generally do not constitute excusable neglect"); *Covington v. P.I.E. Mut. Ins. Co.*, 149 Ohio App.3d 406, 2002-Ohio-4732, ¶ 21, 22 (10th Dist.) (favorably quoting point that " 'courts look at (1) whether the circumstances involved were under a party's own control * * * and (2) whether the party was paying appropriate attention' "; courts are "reluctant to find excusable neglect in circumstances where the called-for action was under the control of the party seeking relief and that party failed to make sure that the act was performed") (citation omitted).

{¶ 49} Mr. To has pointed to no "special circumstances" that prevented him or his counsel from filing his "missing" exhibits in the first instance or from submitting them to the court once the state's brief put him on notice that those filings had not been made.  He has advanced no explanation or justification for such inaction, on matters under his own control, beyond the bare, unexplained attestation of his counsel that he "inadvertently failed" and "did not realize the oversight." *See* Krajenke Aff. at ¶ 5-6.  Even the circumstances surrounding the timing of Mr. To's execution of his now proffered affidavit remain left to raw speculation.

{¶ 50} This case, then, is nothing like *Kay*, where the delinquent counsel showed that he had timely prepared an answer and explained in some detail how his secretary had misfiled it due to "reorganization of the firm's accounting system." 76 Ohio St.3d at 20. Rather, a "mere allegation that the movant's failure to file * * * was due to 'excusable neglect and inadvertence,' without any elucidation, cannot be expected to warrant relief." *Rose Chevrolet v. Adams*, 36 Ohio St.3d 17, 21 (1988) (adding:  "In *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 249, * * * this court stated that the determination of whether excusable neglect occurred 'must of necessity take into consideration all the surrounding facts and circumstances.'  If the movant fails to apprise the court of those surrounding facts and circumstances and the court subsequently overrules the motion, that judgment

cannot be characterized as an abuse of discretion") (citation omitted).   "Because we find appellant did not allege [operative] facts to establish a Civ.R. 60(B) ground for relief, the trial court did not abuse its discretion in failing to hold an evidentiary hearing." *Cunningham*, 2008-Ohio-6911, at ¶ 37.

**Conclusion**

{¶ 51} The trial court did not err in denying Mr. To's Civ.R. 60(B) motion on the basis that he failed to meet "*GTE* Prong 3" when he did not allege facts sufficient to warrant relief under Civ.R. 60(B)(1) through (5).  The trial court therefore did not need to assess whether Mr. To would have a meritorious claim or defense to present if his claim for relief were granted, or whether he had filed his Civ.R. 60(B) motion in a timely fashion.  *See, e.g., Gamble Hartshorn*, 2018-Ohio-980, at ¶ 33.

{¶ 52} Appellant's sole assignment of error is overruled.   The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, P.J., and DORRIAN, J., concur.

———————————————