The STATE of Ohio, Appellee,

v.

KERNS, Appellant.

[Cite as *State v. Kerns,* 161 Ohio App.3d 76, 2005-Ohio-2578.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 04CA2936.

Decided May 12, 2005.

Lynn Alan Grimshaw, Scioto County Prosecuting Attorney, and R. Randolph Rumble, Assistant Prosecuting Attorney, for appellee.

Buckler, Tieman & Sayre, L.L.C., and Chadwick K. Sayre, for appellant.

Peter B. Abele, Presiding Judge.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Elvis Presley Jeremy Kerns, defendant-appellant, guilty of voluntary manslaughter in violation of R.C. 2903.03(A).

{¶ 2} The following errors are assigned for review:

First Assignment of Error:

Appellant's sentence is contrary to law because the record does not support the court's findings that a minimum sentence would demean the seriousness of the offense.

Second Assignment of Error:

Appellant's sentence is contrary to law because the trial court failed to follow the proper statutory procedure for felony sentencing.

{¶ 3} In the evening of July 6, 2003, and into the early morning of July 7, a disturbance arose at the Farley Square apartments in Portsmouth. The disturbance began when someone's dog defecated in another resident's yard. This situation escalated to a standoff between two groups of residents—each shouting racial epithets at the other. Sometime during that confrontation, appellant and his wife, Amy Kerns, emerged from their apartment and joined in the fray.[1] While the Kernses were outside, someone threw a beer can that hit appellant's wife in the head. Police eventually arrived and told the crowd to return to their apartments.

{¶ 4} The next day, appellant and his wife left their apartment to go to the doctor. In the complex parking lot they were approached by Carlton Cave. The two men exchanged words, and Cave began to punch appellant in the face.[2] Amy Kerns tried to step between them, and, during that momentary interlude, her husband drew a knife. Cave then tried to withdraw, but appellant chased Cave through the parking lot and finally caught him. The two men tussled, and Cave suffered a fatal stab wound. He died at the scene. Appellant took his wife to the doctor and then fled the area. Authorities apprehended appellant five months later.

{¶ 5} The Scioto County Grand Jury returned an indictment charging appellant with murder in violation of R.C. 2903.01(A). He pleaded not guilty, and the matter came on for a three-day jury trial in February 2004. At trial, the

---

1. Appellant and his wife both claimed that they had gone outside not to participate in the melee but to ask for quiet so that Amy Kerns, who had had recent surgery, could sleep.

2. The evidence was uncontroverted that Carlton Cave was the initial aggressor in this incident.

evidence revealed that Cave had been the aggressor in the incident that had cost him his life. At the same time, however, several witnesses testified that Cave had attempted to withdraw from the fight but appellant had chased him down and stabbed him. One witness described the scene as a "cat and mouse chase through the parking lot."

{¶ 6} Appellant testified in his own defense and stated that he had been trying to protect his wife. Appellant claimed that he had chased Cave through the parking lot to tell him that did not want any more trouble, not to inflict injury. As to the stabbing, appellant's testimony was somewhat unclear. At one point, appellant claimed that he could not recall when he had stabbed Cave. At another point, appellant claimed that the stabbing had been an accident and Cave had fallen on the knife.

{¶ 7} The jury found appellant not guilty of murder but guilty of voluntary manslaughter in violation of R.C. 2903.03(A). After the jury was discharged, the court proceeded to sentencing. After finding that the minimum sentence would demean the seriousness of the crime, the court sentenced appellant to a nine-year term of incarceration. This appeal followed.

I

{¶ 8} Appellant asserts in his first assignment of error that the record does not support the trial court's finding that a minimum sentence demeans the seriousness of his offense. We disagree.

{¶ 9} Our analysis begins with R.C. 2903.03(B), which specifies that voluntary manslaughter is a first-degree felony. The available prison sentences for first-degree felonies range from three to ten years. R.C. 2929.14(A)(1). If a trial court imposes a prison term on someone who has not previously been sentenced to prison, it must impose the shortest term authorized by law unless, inter alia, it finds on the record that the shortest prison term "will demean the seriousness of the offender's conduct." R.C. 2929.14(B)(2); *State v. Edmonson* (1999), 86 Ohio St.3d 324, 325, 715 N.E.2d 131.

{¶ 10} Initially, we note that it is not clear from the record whether appellant has been previously sentenced to prison. Because both parties and the trial court operated under the assumption that he had not, we will do so as well for purposes of our review.

{¶ 11} Given that appellant has not previously been sentenced to prison, he should have been sentenced to the minimum possible sentence under R.C. 2929.14(A)(1) (three years), unless the trial court explicitly found on the record that such a sentence demeaned the seriousness of the offense. We note that the transcript in this case reveals that the trial court did in fact make such a finding

and rejected a minimum sentence because it "would demean the seriousness of the offense." Thus, the court complied with the R.C. 2929.14(B)(2) statutory requirements.

{¶ 12} Nevertheless, appellant argues that the record does not support such a finding. Appellant points to the sole seriousness factor cited by the court (a racial motivation for the slaying) and argues that this is insufficient to support the court's finding. We note, however, that a trial court is not required to give its reasons for finding that a minimum sentence would demean the seriousness of an offense. *Edmonson,* supra at the syllabus; *State v. Comer,* 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, at ¶ 26, fn. 2. The fact that the court cited this one factor, without citing others, is not sufficient reason to find that the trial court's determination was not supported by the record.

{¶ 13} Appellant further argues that the record is insufficient to support a finding that the homicide was racially motivated. He refers to an instance when the state cross-examined Amy Kerns on her use of the word "boys" to describe African–Americans. Appellant claims that this is a harmless colloquialism that should not be misconstrued as a racial slur or evidence that the homicide was racially motivated. However, appellant's argument seriously understates the evidence in the record from which one may infer that this crime was racially motivated. The evidence was uncontroverted that appellant and his wife were part of the standoff in the incident that occurred at Farley Square on July 6 and 7. Portsmouth Police Officer Douglas Kelly identified appellant as one of the people who had been yelling racial slurs. Moreover, Portsmouth Police Detective James Charles related that appellant had called Farley Square "one big black family." In a taped interview with police that was played during trial, appellant said that he had not slept the night of the incident at Farley Square because he was afraid that black people would stake out his apartment and that he had not turned himself in to police because he was afraid that black people would purposely get themselves arrested in order to get into jail to get him. This evidence does indicate a racial component in the slaying.

{¶ 14} Moreover, although the trial court did not expressly refer to it, another important fact could have factored into the court's decision. The evidence revealed that Cave had been the initial aggressor in this incident but that appellant had not stabbed Cave when the fight first broke out. Rather, the two men were separated, and appellant had the opportunity to pull the knife. Cave attempted to withdraw when he saw the knife, and appellant chased after Cave, tracked him down, and stabbed him. This fact may well have factored into the court's determination that a minimum prison sentence would demean the seriousness of the offense. In light of appellant's decision to chase the victim, rather than permitting him to retreat, and considering the evidence of a racial motiva-

tion for the crime, we believe that ample evidence exists in the record to support the trial court's determination that a minimum sentence demeans the seriousness of this offense.

{¶ 15} Accordingly, we conclude that appellant's first assignment of error is without merit and is hereby overruled.

## II

{¶ 16} Appellant asserts in his second assignment of error that the trial court erred because it did not follow the requisite statutory procedure before it imposed sentence. Specifically, appellant contends that the sentencing-hearing transcript is devoid of any indication that the court considered the seriousness factors in R.C. 2929.12(B) or the mitigating factors in R.C. 2929.12(C) before it imposed sentence. We agree.

{¶ 17} R.C. 2929.12(A) states that a trial court imposing a felony sentence has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. In exercising that discretion, however, courts must consider the factors in R.C. 2929.12(B) and (C) that relate to the seriousness of the conduct. Factors that tend to make a crime more serious are set out in R.C. 2929.12(B), as follows:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender commit-

ted the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

{¶ 18} Factors that tend to make a crime less serious are set out in R.C. 2929.12(C), as follows:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

{¶ 19} Although the sentencing entry in this case makes an oblique reference to the effect that the trial court considered those factors set out in R.C. 2929.12, it contains no discussion of those factors or explanation why the trial court decided to sentence appellant to a term of imprisonment one year below the maximum allowable sentence. Moreover, appellant correctly points out that nothing in the transcript indicates that the trial court considered the factors during the sentencing hearing.

{¶ 20} We recognize that R.C. 2929.12(A) does not require specific findings as to each particular factor in subsections (B) and (C). *State v. Mustard,* Pike App. No. 04CA724, 2004-Ohio-4917, 2004 WL 2072454, at ¶ 23; *State v. Orlando* (Nov. 18, 1998), Lawrence App. No. 97CA57, 1998 WL 823758. It is sufficient if the record supports an inference that the court has examined the factors. *Mustard,* supra, at ¶ 23; *State v. Cody* (Oct. 30, 2001), Washington App. No. 00CA56, 2001 WL 1346127; also see *State v. Fisher,* Lake App. No. 2002–L–020, 2003-Ohio-3499, 2003 WL 21509261, at ¶ 11 (findings mandated by R.C. 2929.12 must appear either in the judgment, the transcript of the sentencing hearing, or somewhere on the record in the sentencing exercise).[3] The record in this case, however, is too scant to allow an inference that the trial court fully considered the requisite factors.

{¶ 21} As mentioned above, although the trial court referred to R.C. 2929.12 in its sentencing entry, there is no discussion of any of the specific factors in

---

**3.** We parenthetically note that Judge Griffin and Professor Katz favor requiring trial courts to specify "on the record the factors which apply in the case and which helped to determine the sentence imposed." Griffin & Katz, Ohio Felony Sentencing Law (2002 Ed.) 60, Author's Comments—2929.12–III. Although this Court often relies on the insightful analysis these experts bring to this highly convoluted area of the law, we nevertheless adhere to our previous decisions in *Mustard* and *Cody* that the record need provide only an inference that the court considered the requisite factors.

subsections (B) and (C), nor is there any discussion of the facts in that entry to give rise to an inference that the court fully considered the factors. Insofar as the transcript is concerned, we find nothing to indicate that R.C. 2929.12 was considered prior to imposing sentence. We note that the trial court does make several comments in the transcript that may have had a bearing on the sentence, including that there was a racial motivation for this crime, appellant cooperated with the prosecution, appellant had a minimal prior criminal record, and appellant lacked remorse until the end of the proceedings. These comments, however, were made in the context of the court's decision whether to "impose the longest prison term," which suggests the court focused on R.C. 2929.14(C) rather than R.C. 2929.12(B) and (C). All things considered, we find no inference that the trial court considered the requisite factors in subsections (B) and (C) of that statute before it imposed the nine-year sentence.

{¶ 22} The state counters by referring, again, to the *Edmonson* syllabus and argues that the trial court is not required to specifically discuss the R.C. 2929.12 factors. We reject this argument, however, because the language of the *Edmonson* syllabus shows that it applies only to an R.C. 2929.14(B) determination that a minimum prison sentence demeans the seriousness of the offense. Nothing in the syllabus or in the *Edmonson* opinion addresses what a court must do in reference to R.C. 2929.12.

{¶ 23} Further, as we state above, we do not require trial courts to provide a factor-by-factor analysis of the statute. As long as the record provides some inference that the court considered the R.C. 2929.12(B) and (C) factors, we will hold that it has satisfied the mandates of subsection (A). In this case, however, the record does not support such an inference.

{¶ 24} For these reasons, we hereby sustain appellant's second assignment of error. We emphasize, however, that we do not pass on the propriety of imposing a nine-year sentence in this case. Rather, we hold only that the trial court has not demonstrated that it considered the requisite statutory factors before it imposed that sentence.

{¶ 25} Having sustained the second assignment of error, the trial court's sentencing judgment is hereby reversed, and this matter is remanded for resentencing consistent with this opinion.[4]

Judgment affirmed in part<br>and reversed in part,<br>and cause remanded.

HARSHA, J., concurs.

---

4. As we have noted time and time again, we emphasize that our opinion should not be construed as criticism of the trial court. The problem has nothing to do with the expertise of

KLINE, J., concurs in the judgment and in the opinion as to its discussion of assignment of error I and dissents as to its discussion of assignment of error II.

either the trial court or the Scioto County Prosecutor but everything to do with the confusion and complexity unleashed in 1995 under the guise of revamped felony sentencing laws. See generally *State v. Grodhaus* (2001), 144 Ohio App.3d 615, 619, 761 N.E.2d 80; *State v. McPherson* (2001), 142 Ohio App.3d 274, 282–283, 755 N.E.2d 426.