[Cite as *State v. Watkins*, 2020-Ohio-5203.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 20AP-313 |
| v. | : | (C.P.C. No. 17CR-6903) |
| David L. Watkins, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 5, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant. **Argued:** *Seth Gilbert*.

**On brief:** *Ohio Justice and Policy Center*, *David A. Singleton*, *Michael L. Zuckerman*, *William J. Pohlman*, and *Terri L. McKee*, for appellee. **Argued:** *Michael L. Zuckerman*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas granting, in part, the April 22, 2020 "emergency motion to withdraw guilty plea or in the alternative for temporary relief from judgment" of defendant-appellee, David L. Watkins. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 21, 2017, a Franklin County Grand Jury indicted appellee for possession of cocaine, in violation of R.C. 2925.11, a felony of the first degree, and trafficking in cocaine, in violation of R.C. 2925.03, also a felony of the first degree. A one-year firearm specification and a monetary forfeiture specification accompanied each count

in the indictment. As a result of a plea agreement with the prosecutor, appellee pleaded guilty to trafficking in cocaine with a monetary forfeiture specification; the other charge and specifications were dismissed. On October 23, 2019, the trial court imposed a mandatory prison term of eight years as recommended by the parties and waived both the fine and court costs. A mandatory five-year term of post-release control was also imposed on appellee. The judgment entry of conviction and sentence contains the following language regarding appellee's health: "The Court notes that the Defendant has just had a kidney transplant and must be kept on a strict regiment of medications and recommends they be implemented immediately." (Oct. 23, 2019 Jgmt. Entry at 2.) On October 28, 2019, the trial court issued an order of forfeiture in the amount of $3,200.

{¶ 3} On April 22, 2020, while appellee was serving his prison sentence with the Ohio Department of Rehabilitation and Corrections ("DRC") at DRC's Noble Correctional Institution, appellee filed his "emergency motion to withdraw guilty plea or in the alternative for temporary relief from judgment." The motion seeks the following relief:

> Because of underlying medical conditions, specifically immunosuppression, diabetes and hypertension, which individually and collectively heighten his risk for severe COVID-19 complications, including death, should he become infected with the disease, [appellee] moves to withdraw his guilty plea under Crim.R. 32.1. If allowed to do so, Mr. [appellee] would re-plead guilty to drug trafficking and would expect to receive the same mandatory eight-year sentence. However, at his resentencing hearing, he would ask the court to allow him to remain in the community on home confinement until it is safe for him to return to prison once the threat from COVID-19 subsides. *Alternatively, [appellee] moves for temporary relief from judgment* under Crim.R. 57(B) and Civ.R. 60(B)(5).

(Emphasis added.) (Def.'s Emergency Mot. to Withdraw Guilty Plea or in the Alternative for Temporary Relief From Jgmt. at 1.)

{¶ 4} At the motion hearing on May 6, 2020, the trial court expressed its desire to temporarily release appellee from confinement because appellee was at high risk of serious harm or death if infected with COVID-19, due to his comorbidities of recent kidney transplant, diabetes, and hypertension. Appellee's trial counsel admitted at the hearing that he was not aware of a single inmate at Noble Correctional Institution who had contracted COVID-19. The trial court noted that relief under the Ohio Rules of Civil

Procedure would not be appropriate because Crim.R. 32.1 governed his motion to withdraw his guilty plea. As a result of the hearing, the trial court reserved ruling on appellee's motion and requested appellee's counsel inform the court if there were any inmates who subsequently tested positive for the COVID-19 virus at Noble Correctional Institution.

{¶ 5} On May 28, 2020, the trial court ordered the Franklin County Sheriff to convey appellant from Noble Correctional Institution to the court for a "Judicial Release Hearing." (May 28, 2020 Order to Transport at 1.) On June 4, 2020, the trial court held a second hearing on appellee's motion at which time the trial court was informed that a correction officer at Noble Correctional Institution had tested positive for COVID-19 but that no inmate had yet tested positive. Counsel agreed with the trial court that the "plea was properly taken" and that appellee was "not attacking * * * the legality or meeting all the Rule 11 requirements for the plea." (June 4, 2020 Tr. at 8.) The trial judge, nevertheless, informed the prosecutor he was "looking for a creative way to let [appellee] out." (June 4, 2020 Tr. at 7.) The trial court subsequently announced it's ruling on the record in relevant part as follows:

> THE COURT: All right. This is a unique situation. Mr. Watkins is extremely at risk. Four weeks ago -- and it's been bothering me for four weeks, to be honest with you, * * * -- going [to] bed to night [sic], thinking if this guy gets it, he's going to die and it's on me.
>
> It isn't really on me, because he put himself in a position to commit a crime, and it was a bad crime, but I would not want it on my conscience that this individual got COVID and died.
>
> * * *
>
> [A]t this time, I am going to grant the motion out of compassion, out of humanity. I think it's the right thing to do, you know. I guess I'm not violating the law totally, but if I am, so be it. Let the Court of Appeals tell me, and he'll go back to prison.
>
> But for right now, I am going to grant a motion of bond of $10,000 recognizance. He will be under house arrest. He's not permitted to leave the house except for medical reporting and any legal appointments. It will be strict compliance. He's also to -- you know, I'm doing this over your objection.

(June 4, 2020 Tr. at 12-13.)

{¶ 6} In accordance with this ruling, the trial court issued the following judgment entry:

> This matter came on for a hearing pursuant to the defendant's Motion to Withdraw Guilty Plea or in the Alternative for Temporary Relief from Judgment that was considered herein by the Court as a Motion to Withdraw the previously entered guilty plea under the provisions of CR R 32.1.
>
> The court had a hearing on the motion on May 6, 2020 and after holding the motion in abeyance rescheduled it for hearing today. The defendant was transported from Noble Correctional and a hearing was held with the court and all counsel present.
>
> *For the reasons stated on the record at that hearing the Court hereby continues the hearing on the Motion to Withdraw the Guilty plea until September 10, 2020 at 9:00 AM, and further orders that in the interim the Defendant shall be released on a $10,000 Recognizance Bond with House Arrest.* The defendant shall return to court that date to continue the remainder of his sentence unless the court determines it is not safe for him to return to prison at that time. The Court Disposition sheet is attached hereto. The State made a Motion for a Stay of the court's decision and order, which is hereby denied.

(Emphasis added.) (June 9, 2020 Entry at 1.)

{¶ 7} On June 11, 2020, appellant filed a notice of appeal to this court from the June 9, 2020 judgment entry, a motion to stay the trial court judgment, and a motion for leave to appeal. On June 25, 2020, this court issued the following journal entry:

> Appellant State of Ohio's June 11, 2020 motions for a stay of the trial court's judgment pending appeal and to expedite this appeal are denied. This appeal will be scheduled for oral argument promptly following the completion of briefing. The state's June 11, 2020 motion for leave to appeal will be determined at such time as the court addresses the merits of this appeal as taken as of claimed right.

{¶ 8} On September 14, 2020, appellant filed a motion to supplement the record on appeal with the trial court's September 10, 2020 "criminal case processing sheet." (Mot. to Supp. the Record at 1.) On September 14, 2020, this court issued a journal entry stating that appellant's motion "shall be submitted to the court at such time that court determines the merits of this appeal." (Journal Entry at 1.)

{¶ 9} For good cause shown, appellant's September 14, 2020 motion is granted, and the record on appeal is hereby supplemented with the September 10, 2020 criminal case processing sheet. The criminal case processing sheet shows the trial court continued the hearing on appellee's motion to withdraw his guilty plea to January 4, 2021.[1] Accordingly, appellee remains on house arrest.

## II. ASSIGNMENT OF ERROR

{¶ 10} Appellant assigns the following as trial court error:

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING DEFENDANT'S RELEASE ON RECOGNIZANCE BOND PENDING THE UNJUSTIFIED CONTINUANCE OF A HEARING ON THE FACIALLY MERITLESS MOTION TO WITHDRAW PLEA WHEN THE ORDER OF RELEASE AMOUNTED TO A SUSPENSION OF SENTENCE THAT WAS BEYOND THE COURT'S JURISDICTION AND AUTHORITY TO GRANT.

## III. LEGAL ANALYSIS

### A. Assignment of Error

{¶ 11} In appellant's assignment of error, appellant argues the trial court erred when it issued the June 9, 2020 order temporarily releasing appellee from prison pending the court's ruling on appellee's motion to withdraw his guilty plea. In response, appellee contends the trial court had authority to release him on bond pending a determination of appellee's motion to withdraw his guilty plea. Appellee has also argued this court does not have jurisdiction of this appeal and urges us to dismiss the appeal because the trial court's June 9, 2020 judgment entry is not a final, appealable order.

{¶ 12} At the outset of our discussion and to provide context for our ruling, we note the Supreme Court of Ohio recently weighed in on the obligations of the judiciary in dealing with the COVID-19 pandemic. In *State ex rel. Lichtenwalter v. Dewine*, 158 Ohio St.3d 1476, 2020-Ohio-1465 (Donnelly, J., concurring), an Ohio inmate, Lichtenwalter, filed an action against the governor and DRC seeking a writ of habeas corpus or mandamus temporarily releasing him from confinement during the COVID-19 pandemic.

---

[1] On September 21, 2020, appellee filed a "response" to appellant's September 14, 2020 motion wherein appellee requested this court further supplement the record with information that was not before the trial court when it ruled on appellee's motion for alternative relief. According to appellee's information, two inmates at Noble Correctional Institution have tested positive for COVID-19 since the June 4, 2020 hearing.

Lichtenwalter claimed he was an immunocompromised individual who was at great risk of serious harm or death if he contracted COVID-19 while confined to prison. The Supreme Court granted respondents' motion to dismiss relator's petition, without opinion, for failure to state a claim. In his concurring opinion, Justice Donnelly explained that "[b]ecause Lichtenwalter does not seek immediate release from state custody but instead seeks a temporary reprieve from the environment of prison, habeas corpus is not the appropriate remedy." *Id.* at ¶ 2. *See Waites v. Gansheimer*, 110 Ohio St.3d 250, 2006-Ohio-4358, ¶ 6 (a civil-rights action under 42 U.S.C. 1983, rather than habeas corpus, is the appropriate avenue for prisoners to challenge the conditions of their confinement).

{¶ 13} Justice Donnelly also acknowledged that judicial authority of inmates in the custody and control of DRC is very limited:

> And although the executive branch does have power to grant clemency and to liberally execute remedial statutes, such as R.C. 2967.18 (reduction of prison populations in the face of overcrowding emergencies) and 2967.05 (conditional release of prisoners who are severely ill or at risk of imminent death), this court does not have the authority to control the executive branch's discretion to exercise these powers through mandamus. *See State ex rel. Sheppard v. Koblentz*, 174 Ohio St. 120, 122-123, 187 N.E.2d 40 (1962) (mandamus will not issue to control discretionary decisions).
>
> I hope that petitioner and others in Ohio do not see today's decision as the judiciary's throwing up its hands and claiming that there is nothing that it can do. * * * Ohio's trial courts have the power to **liberally and expeditiously grant appropriate requests for judicial release.** And with the stroke of a pen, the General Assembly could remove various arbitrary statutory restrictions[1] on judicial release that currently fetter the judiciary's discretion.
>
> [1] *For example, the General Assembly could allow prisoners like petitioner who are serving nonmandatory prison terms of two to five years to file a motion for judicial release prior to the expiration of the 180-day period set forth in R.C. 2929.20(C)(2).*

(Emphasis added.) (Footnote in original.) *Id.* at ¶ 2-3.

{¶ 14} In *Lichtenwalter*, Justice Donnelly encouraged trial courts to "liberally and expeditiously grant appropriate requests for judicial release," as a means to mitigate the potentially catastrophic impact effect of COVID-19 on "the tens of thousands of prisoners

in Ohio as well as to the tens of thousands of people who are prison employees along with those living in the households of prison employees." *Id.* at ¶ 2. The concurring opinion in *Lichtenwalter* also recognized the authority of the judicial branch to release inmates who may be at greater risk for contracting COVID-19 is constrained by statutory restrictions on judicial release. Justice Donnelly acknowledged the executive branch of state government has "broad authority to take an assortment of steps to prevent such a catastrophe," and the General Assembly, not the courts, has the power to remove statutory restrictions on judicial release. *Id.* at ¶ 3.

{¶ 15} As this court noted in *State v. Jama*, 10th Dist. No. 11AP-210, 2012-Ohio-2466, common pleas court jurisdiction in postconviction criminal matters is limited:

> Criminal law in Ohio is statutory in nature. *State v. Moore*, 4th Dist. No. 03CA18, 2004 Ohio 3977, ¶ 10, citing *Lynn v. Limbert*, 117 Ohio App.3d 236 (7th Dist.1977). Therefore, courts have only that power which has been conferred by statute or by rule. *Id. See also State ex rel. Leis v. Outcalt*, 1 Ohio St.3d 147, 148 (1982) (in Ohio, criminal procedure is governed by statute); and *Municipal Court of Toledo v. State ex rel. Platter*, 126 Ohio St. 103 (1933), paragraphs one and three of the syllabus (Ohio criminal procedure is regulated entirely by statute; for example, Ohio trial courts do not have inherent power to suspend execution of a sentence in a criminal case and may only order such a suspension as authorized by statute).
>
> Furthermore, a trial court generally lacks the authority to reconsider its own valid final judgments in a criminal case. *See State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 18; *State v. Boles*, 2d Dist. No. 23037, 2011-Ohio-3720, ¶ 34.

*Id.* at ¶ 36-37.

{¶ 16} Under Ohio law, once an offender is delivered to the institution where the sentence is to be served, the sentence has been executed and the trial court loses jurisdiction to modify the sentence. *State v. Carr*, 167 Ohio App.3d 223, 2006-Ohio-3073 (3d Dist.); *State v. Kerns*, 161 Ohio App.3d 76 (4th Dist.2005). "Absent a clerical error or a void sentence, the trial court may not amend or modify a criminal sentence once it has been executed." *State v. Bellamy*, 181 Ohio App.3d 210, 2009-Ohio-888, ¶ 10 (2d Dist.), citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 19; *State v. Sharp*,

2d Dist. No. 21958, 2008-Ohio-1618, ¶ 4; *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197.

{¶ 17} In 1997, the General Assembly did away with statutory concepts of "shock parole" and "shock probation," which granted authority to judges and the Ohio Adult Parole Authority to modify the sentences of convicted felons sentenced to a term of imprisonment. 1 Anderson's Ohio Criminal Practice and Procedure, Section 36.101 (2019). In their place, the General Assembly enacted R.C. 2929.20, which created "judicial release." Judicial release is now "the sole source of judicial authority for modifying the sentence of an incarcerated felon." 1 Anderson's Ohio Criminal Practice and Procedure, Section 36.101 (2019). *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, ¶ 29. *See also State v. Hoy*, 3d Dist. No. 14-04-13, 2005-Ohio-1093, ¶ 46 ("[B]ecause the trial court sentenced [appellant] to prison, the trial court was not authorized to modify that sentence by simply placing [appellant] on community control. The only authority for the court to implement community control sanctions would come through judicial release.").[2] Judicial release is available only to "eligible offenders." R.C. 2929.20(A)(1)(b). Pursuant to R.C. 2929.20(A)(1)(a), an "eligible offender" means "any person who, on or after April 7, 2009, is serving a stated prison term that includes one or more *nonmandatory prison terms*." (Emphasis added.)

{¶ 18} In 2015, the General Assembly amended R.C. 2929.20 by adding certain provisions authorizing common pleas courts to release an offender from confinement, even an offender serving a mandatory prison term, where the offender establishes that he "is in imminent danger of death, is medically incapacitated, or is suffering from a terminal illness." That provision appears in R.C. 2929.20(N) and provides as follows:

> Notwithstanding the eligibility requirements specified in division (A) of this section and the filing time frames specified in division (C) of this section and notwithstanding the findings required under division (J) of this section, the sentencing court, upon the court's own motion and after considering whether the release of the offender into society would create undue risk to public safety, may grant a judicial release to an offender who is not serving a life sentence at any time during the offender's imposed sentence when the

---

[2] R.C. 2929.20 became effective July 1, 1996. *See* Am.Sub.S.B. Nos. 2 and 269. R.C. 2947.061 providing for "shock probation" and R.C. 2967.31 providing for "shock parole" were repealed on July 1, 1996.

director of rehabilitation and correction certifies to the
sentencing court through the chief medical officer for the
department of rehabilitation and correction that the offender
is in imminent danger of death, is medically incapacitated, or
is suffering from a terminal illness.

**{¶ 19}** R.C. 2929.20(S) requires the trial court to revoke judicial release granted pursuant to R.C. 2929.20(N) "[i]f the health of an offender who is released under division (N) of this section improves so that the offender is no longer terminally ill, medically incapacitated, or in imminent danger of death." R.C. 2929.20 also provides specific procedures regarding notice, hearing, and supervision of the offender upon release. R.C. 2929.20(P) through (T).[3]

**{¶ 20}** R.C. 2953.08 provides a prosecuting authority with a right of appeal from a trial court order granting judicial release as follows:

(B)  In addition to any other right to appeal * * * a prosecuting
attorney * * * may appeal as a matter of right a sentence
imposed upon a defendant who is convicted of or pleads guilty
to a felony or, in the circumstances described in division
(B)(3) of this section the modification of a sentence imposed
upon such a defendant, on any of the following grounds:

* * *

(3)  The sentence is a modification under section 2929.20 of
the Revised Code of a sentence that was imposed for a felony
of the first or second degree.

**{¶ 21}** Here, appellee moved the trial court, pursuant to Crim.R. 32.1, to withdraw his guilty plea or, in the alternative, for temporary relief from his prison sentence during the pandemic. The stated grounds for relief being appellee's increased risk of serious harm or death if he should contract the COVID-19 virus while incarcerated. Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; *but to correct manifest injustice the court after sentence may set aside the*

---

[3] In the federal system, Section 3582(c)(1)(A)(i) of Title 18, United States Code, provides for compassionate release where there are "extraordinary and compelling reasons" for a sentence reduction and the inmate "does not present a danger upon release." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir.2020). *See United States v. Kincaid*, 802 Fed.Appx. 187 (6th Cir.2020). *See also* Emergency Grants of Release And Compassion Effectively Act of 2020, 116 S. 3698, 2020 S. 3698 ("A bill to expand compassionate release authority and elderly home confinement access for offenders with heightened coronavirus risk."); *United States v. Alam*, 960 F.3d 831, 836 (6th Cir.2020) ("The CARES Act expands the power of the Bureau of Prisons to 'place a prisoner in home confinement' as an alternative to compassionate release. Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020)."

*judgment of conviction and permit the defendant to withdraw his or her plea*." (Emphasis added.)

{¶ 22} At the June 4, 2020 hearing, appellee's counsel conceded there was no basis in law or fact to successfully challenge his guilty plea. Appellee maintained if he were permitted to withdraw his plea, he would reenter the same plea at a later date, when the danger of contracting COVID-19 while in prison had passed. The trial court did not rule on appellee's motion to withdraw his guilty plea but did grant appellee's alternative motion by releasing him from prison on a $10,000 recognizance bond with home confinement. The trial court subsequently continued the hearing on appellee's motion to withdraw his guilty plea to January 4, 2021, effectively extending his temporary release for another 90 days.

{¶ 23} Because the trial court did not consider the merits of appellant's motion to withdraw his guilty plea, we need not specifically address appellee's argument that his continued confinement during the COVID-19 pandemic constitutes a manifest injustice requiring withdrawal of appellee's guilty plea and the setting aside of his conviction. Rather, we must address the merits of the trial court's decision to grant appellee's request for alternative relief "out of compassion" by suspending his prison sentence during the pandemic. (June 4, 2020 Tr. at 13.) Appellant argues that the June 9, 2020 judgment amounted to a judicial release under R.C. 2929.20 and should be reviewed by this court as such. We agree.

{¶ 24} As a general rule, "[j]udgments are to be construed like other written instruments by giving the language of the instrument its ordinary meaning." *Leonard v. Pilkington*, 10th Dist. No. 14AP-650, 2015-Ohio-1432, ¶ 21, citing *Shaver v. Std. Oil Co.*, 135 Ohio App.3d 242 (6th Dist.1999), citing *Elling v. Witt*, 6th Dist. No. 94OT032 (Feb. 10, 1995). "The legal effect, rather than the language used, should control." *Leonard* at ¶ 21, citing *Boyle v. Stroman*, 56 Ohio Law Abs. 451 (8th Dist.1950). In construing judgments for purposes of appeal, "if a judgment is susceptible of two interpretations, one of which the court had jurisdiction to render and the other of which it had no jurisdiction to render, the former construction is adopted." 62 Ohio Jurisprudence 3d, Judgments, Section 28 (2020), citing *Seitz v. Seitz*, 92 Ohio App. 338 (8th Dist.1951), *aff'd*, 156 Ohio St. 516 (1952). *See also State v. Davidson*, 17 Ohio St.3d 132, 135 (1985) ("The determination of whether a motion is a 'motion to suppress' or a 'motion *in limine*' does not depend on what it is labeled.

It depends on the type of relief it seeks to obtain. Any other result would improperly elevate form over substance.") (emphasis sic).

{¶ 25} In *State v. Turner*, 11th Dist. No. 2020-L-066, 2020-Ohio-4696, the Eleventh District Court of Appeals recently dismissed an inmate's mandamus action seeking an order requiring DRC to release him from prison due to the COVID-19 pandemic. In dismissing the mandamus action, the Eleventh District determined that relator was clearly seeking judicial release, not mandamus:

> We first point out that relator's petition essentially requests release from prison, "but habeas corpus, rather than mandamus * * *, is the proper action to seek this type of relief. * * *
>
> * * *
>
> The relief relator seeks in mandamus judicial release. His first basis for his request is premised upon the current COVID-19 pandemic; he maintains that because the crimes for which he is incarcerated are non-violent, he should be granted judicial release pursuant to R.C. 2929.20(B). Pursuant to R.C. 2929.20(B), an "eligible offender" may file a motion for judicial release *with the sentencing court*. Because relator has an adequate remedy at law by filing a pleading with the trial court, he fails to state a claim in mandamus upon which relief can be granted.
>
> It is worth pointing out that relator had previously filed two motions for judicial release with the trial court, each of which were denied on May 1, 2020. A denial of a motion for judicial release is not a final, appealable order. *See State v. Tackett*, 11th Dist. Ashtabula Nos. 2014-A-0038 and 2014-A-0042, 2015-Ohio-3411, ¶11; *see also State v. Reaver*, 2d Dist. Champaign No. 17 CA 002, 2017-Ohio-2685, ¶ 3; *State v. Ingram*, 10th Dist. Franklin No. 03AP-149, 2003-Ohio-5380, ¶ 6-7. In this regard, relator did not have an adequate remedy via direct appeal to this court. Still, pursuant to R.C. 2929.20(D), an eligible offender may re-file a motion for judicial release so long as (1) it meets the applicable time periods, set forth in the statute, and (2) the trial court did not deny the previous motion(s) with prejudice. The trial court denied relator's previous motions without prejudice; hence, to the extent he is an eligible offender and the subsequent motion meets statutory time requirements, it would appear relator still possesses an adequate remedy via statute.

(Emphasis sic.) *Id.* at ¶ 3, 7-8.

{¶ 26} Here, the trial court expressly deferred ruling on the branch of appellee's motion seeking to withdraw his guilty plea pursuant to Crim.R. 32.1. As such, appellee's conviction and sentence based on his plea remain in full force and effect during the period of his release. The trial court, nevertheless, granted the alternative relief requested by appellee when it suspended his prison sentence and released appellee to home confinement on bond. Because judicial release is the sole source of the trial court jurisdiction to modify a prison sentence after execution, the only reasonable construction of the June 9, 2020 judgment entry is judicial release. 1 Anderson's Ohio Criminal Practice and Procedure, Section 36.101 (2019); *Hitchcock*, 2019-Ohio-3246, at ¶ 29. Accordingly, we hold the June 9, 2020 judgment entry constituted an order of judicial release, pursuant to R.C. 2929.20, and we shall review the order accordingly. To construe the judgment in any other manner would ignore the legal effect of the judgment and elevate form over substance.

{¶ 27} We find no merit in appellee's contention that the trial court's order releasing appellee cannot be construed as a "judicial release" because the trial court did not reduce appellee's prison term. Under Ohio law, however, "when a defendant is granted judicial release under R.C. 2929.20, he has already served a period of incarceration, and *the remainder of that prison sentence is suspended* pending either the successful completion of a period of community control or the defendant's violation of a community control sanction." (Emphasis added.) (Internal quotation marks and citations omitted.) *State v. Jones*, 3d Dist. No. 10-07-26, 2008-Ohio-2117, ¶ 12. *See also State v. King*, 4th Dist. No. 19CA10, 2020-Ohio-1512, ¶ 13. "Under R.C. 2929.20, a trial court may reserve the right to reimpose the original sentence upon an offender who violates the terms and conditions of community control following judicial release." *State v. Perry*, 4th Dist. No. 13CA12, 2013-Ohio-4066, ¶ 2. *See also State v. Durant*, 5th Dist. No. 2005 CA 00314, 2006-Ohio-4067, ¶ 16.

{¶ 28} Here, the trial court clearly expressed the intention to return appellee to prison to serve his full term when he was no longer in imminent danger of death due to the pandemic and his comorbidities. There can also be no doubt the June 4, 2020 judgment modified the terms and conditions of appellee's sentence as it suspended service of a mandatory prison term and, in its place, imposed a term of home confinement with conditions. *See State v. Wycuff*, 5th Dist. No. 2000CA00328 (May 21, 2001) ("Since

matters involving probation are governed by statute, viz., R.C. Chapter 2951, it is manifest that a trial court's authority to modify the terms and conditions of a sentence of probation must be provided for by the legislature."); *Hoy*, 2005-Ohio-1093, at ¶ 46 ("[B]ecause the trial court sentenced [appellant] to prison, the trial court was not authorized to modify that sentence by simply placing [appellant] on community control. The only authority for the court to implement community control sanctions would come through judicial release.").

{¶ 29} Appellee's alternative argument that the trial court essentially granted relief under Crim.R. 57 and Civ.R. 60(B)(5) is also unavailing. The Supreme Court has acknowledged "the plain language of Crim.R. 57(B) permits a trial court in a criminal case to look to the Rules of Civil Procedure for guidance when no applicable Rule of Criminal Procedure exists." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, ¶ 10. Accordingly, the civil rules may be invoked where appropriate to fill a void in the rules of criminal procedure in a criminal case. *State v. Strunk*, 12th Dist. No. CA2010-09-085, 2011-Ohio-417, ¶ 8. "By the same token, of course, where the criminal rules do set forth the relevant procedure, recourse to the civil rules is not warranted." *State v. Bang To*, 10th Dist. No. 18AP-751, 2019-Ohio-1795, ¶ 20, citing *Schlee* at ¶ 11-12. Because the relevant provisions of R.C. 2929.20 and Crim.R. 32.1 set forth the applicable procedure to be applied to both branches of appellee's motion, the trial court had no need to invoke the Ohio Rules of Civil Procedure in ruling on appellee's motion for temporary release. Appellee has not cited a single authority employing Civ.R. 60(B) as a means to obtain the release of an offender who is serving a lawful prison term, and this court has found no such authority.

{¶ 30} Appellee has also failed to persuade this court that there exists any other basis in law or fact justifying appellee's release on bond after execution of a mandatory prison sentence. Neither Crim.R. 46, permitting *pretrial release* on bail or bond, or App.R. 8(A), permitting trial courts to grant "bail and to suspend the execution of * * * sentence *during the pendency of * * * appeal*," allows a trial court to release a convicted felon on bail after execution of a prison sentence. (Emphasis added.) Similarly, absent expressed statutory authority, trial courts are not authorized to release prisoners on bail pending the determination of postconviction petitions. *See State v. Lambrecht*, 45 Ohio App.3d 4 (6th Dist.1989) (the postconviction relief statutes do not provide for release on bail pending a determination of the petition). Appellee has not cited any statute authorizing the trial court

to suspend an executed prison sentence and release an offender to home confinement during the pendency of a postconviction motion, and this court has found no such authority.

{¶ 31} Even if the branch of appellee's motion for temporary release on bond were construed as a petition seeking habeas corpus relief, jurisdiction of that petition would lie with the common pleas court of the county in which appellant was imprisoned, not the Franklin County Court of Common Pleas. *See* R.C. 2725.03 ("[N]o court or judge other than the courts or judges of the county in which the institution is located has jurisdiction to issue or determine a writ of habeas corpus [and] [a]ny writ issued by a court or judge of another county to an officer or person in charge at the state institution to compel the production or discharge of an inmate thereof is void."). The Supreme Court has also determined that a writ of habeas corpus is unavailable to a prisoner who is seeking only a temporary release from prison during the pandemic. *Lichtenwalter*, 2020-Ohio-1465.

{¶ 32} Turning to the merits of the order granting judicial release in this case, there is no question appellee was ineligible for conventional judicial release because he was serving a mandatory prison term. *State v. Taylor*, 113 Ohio St.3d 297, 2007-Ohio-1950, ¶ 11 (noting that a mandatory prison term precludes the opportunity for judicial release); *State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, ¶ 14 (because the sentencing court imposed a mandatory four-year prison term, R.C. 2929.13(F)(5) prohibited the court from subsequently granting judicial release). And, while R.C. 2929.20(N) vests trial courts with jurisdiction to release an offender who is serving a mandatory prison term, such as appellee, the record contains no discussion whether appellee could have secured judicial release pursuant to the provision of R.C. 2929.20(N). Moreover, even if judicial release, pursuant to subsection (N), would have been justified under the circumstances set out in appellee's motion, the record does not contain the necessary support for an order of judicial release under subsection (N) as there is no indication "the director of rehabilitation and correction certifie[d] to the sentencing court through the chief medical officer for the department of rehabilitation and correction that [appellee] is in imminent danger of death, is medically incapacitated, or is suffering from a terminal illness."[4]

---

[4] In *Wilson v. Williams*, 961 F.3d 829 (6th Cir.2020), the United States Court of Appeals for the Sixth Circuit reversed an order issued by the Northern District of Ohio requiring the Bureau of Prisons ("BOP") to move a class of inmates out of FCI Elkton because of the COVID-19 pandemic. The Sixth Circuit found "[t]he BOP

{¶ 33} Based on the foregoing, we hold the trial court erred when it granted judicial release to appellee. Accordingly, appellant's assignment of error is sustained. Because we have determined the trial court's June, 9 2020 judgment was an order of judicial release, and because R.C. 2953.08(B)(3) provides appellant with a right of appeal when "[t]he sentence is a modification under section 2929.20 * * * of a sentence that was imposed for a felony of the first or second degree," appellant's June 11, 2020 motion for leave to appeal is moot.

## IV. CONCLUSION

{¶ 34} Having sustained appellant's sole assignment of error, appellant's June 11, 2020 motion for leave to appeal is rendered moot, appellant's September 14, 2020 motion to supplement the record is granted, we reverse and vacate the judgment of the Franklin County Court of Common Pleas, and we remand the matter to the trial court for further proceedings consistent with the law and this decision.

*Motion for leave moot*;
*motion to supplement granted*;
*judgment reversed and cause remanded.*

BROWN and DORRIAN, JJ., concur.

_____

---

has * * * put in place and updated its protocols to address the novel risks from COVID-19. The BOP's steps to prevent and mitigate COVID-19 spread at Elkton are likely reasonable responses to this serious risk." *Id.* at 844. *But* see *United States v. Pabon*, E.D.Pa. No. 17-165-1, 2020 U.S. Dist. LEXIS 78245 (May 4, 2020) (54-year-old inmate who suffers from diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis entitled to compassionate release due to COVID-19 pandemic after serving 14 months of a 46-month sentence); *United States v. Ladson*, E.D.Pa. No. 04-697-1, 2020 U.S. Dist. LEXIS 108551 (June 22, 2020) (54-year-old inmate with Type 2 diabetes who has served 15 years of a 20-year sentence demonstrated "extraordinary and compelling reasons" for compassionate release in view of the COVID-19 pandemic).